400 S.E.2d 869

**David L. WYANT**

v.

**Betsy G. WYANT.**

**No. 19263.**

Supreme Court of Appeals of West Virginia.

Dec. 17, 1990.

R. Joseph Zak, Charleston, for David L. Wyant.

Chester Lovett and Mary Katharine Cooper, Lovett, Cooper & Glass, Charleston, for Betsy G. Wyant.

BROTHERTON, Justice:

The appellant, Betsy G. Wyant, appeals from a final order of divorce entered on December 30, 1988, in the Circuit Court of Kanawha County, West Virginia, which affirmed in part and denied in part the recommended decision of the family law master.

The Wyants were married on June 2, 1979, in Kanawha County and have two sons, who were approximately five years old and one and one-half years old at the time of the final divorce hearing in June,

1988. The Wyants were married for approximately eight years prior to their separation on November 22, 1987.

Mrs. Wyant, age thirty-three, was and remains the primary caretaker of the two children. In her brief, she states that she has "always cooked the meals, did the laundry and cleaned the home for the entire family" and has "contributed important and substantial homemaker services throughout the duration of the marriage." Although Mrs. Wyant has a degree in elementary education, she did not hold a permanent teaching position during her marriage. In September, 1987, shortly before separating from her husband, Mrs. Wyant also obtained a real estate license. However, she has not sold real estate since obtaining this license.

Mr. Wyant, age thirty-five, is an attorney practicing law with a firm in Charleston, West Virginia. In May, 1988, he was an associate earning a $70,000 a year income and netting approximately $3,600 per month. In January, 1989, shortly after the entry of the final divorce order, Mr. Wyant became a partner in the law firm.

After a hearing was held before Family Law Master William A. Tantlinger on March 29, 1988, a temporary order was entered on March 31, 1988, in which Mrs. Wyant was awarded custody of the two children, subject to reasonable visitation by Mr. Wyant. Mr. Wyant was directed to pay the monthly $800.44 mortgage payment on their jointly-owned home, as well as gas, telephone, water, sanitary, and cable bills, "with the aforesaid payments to be denominated as child support for and on behalf of the children." Mr. Wyant was also ordered to pay $800 per month temporary alimony and to maintain medical and hospitalization insurance.

Final hearings were held before the family law master on May 17, 1988, and July 1, 1988. Among other conclusions contained in his recommended decision, the family law master found the jointly-owned home to be marital property and recommended

that it immediately be sold. The order provided that Mr. Wyant would be responsible for payment of the mortgage indebtedness and upkeep of the home, including insurance and taxes, pending sale of the property, for a maximum period of ninety days from the date of the order, after which time Mrs. Wyant would become responsible for these expenses until the house was sold.

Custody of the children was awarded to Mrs. Wyant, and child support was set at $495 per month per child, or $990 per month. Mrs. Wyant was awarded $400 per month rehabilitative alimony.

Both parties objected to the family law master's recommended decision and filed petitions for review in the Circuit Court of Kanawha County. Mrs. Wyant contested the child support and alimony awards and argued that it was unreasonable to expect her to make $700 per month mortgage payments for months or perhaps even years until the marital residence was sold, in light of the fact that she was to receive only $400 a month in alimony and thus was without the funds to make such a payment. Mrs. Wyant maintained that she and the children should be permitted to remain in the home until the youngest child turned eighteen, with Mr. Wyant making the mortgage payment as well as paying for the other related expenses.[1]

In his petition seeking review, Mr. Wyant contested the recommendation that Mrs. Wyant be awarded attorney's fees "in any amount because of [Mrs. Wyant's] financially secure position which makes her more than able to bear her own attorney's fees and costs incurred," as well as the award of rehabilitative alimony, "for the reason that [Mrs. Wyant] is a college graduate, licensed real estate agent, and well-qualified to support herself."

On December 28, 1988, a hearing was held in the Circuit Court of Kanawha County to review the family law master's recommended decision, which was affirmed in part and denied in part. In an order dated

---

1. During depositions taken on May 17, 1988, Mr. Wyant was asked if he would agree to Mrs. Wyant being given exclusive use and occupancy of the marital residence. He responded, "I cannot agree to that. I cannot afford it.... I need the equity out of it."

December 30, 1988, the circuit court found that Mrs. Wyant received between $300 and $400 per month in investment income. Mr. Wyant was ordered to pay $990 per month in child support and to pay Mrs. Wyant $400 per month rehabilitative alimony beginning on the first day of the month following the sale of the marital home and continuing for three years from the date of entry of the court order. The marital home valued at $160,000 was ordered immediately sold. Proceeds from the sale were to be used to (1) pay off the $64,764 mortgage obligation at Charleston National Bank; (2) pay off notes representing $36,000 owed to Mrs. Wyant's parents; and (3) pay $7,500 toward a line of credit reflecting the balance on a loan from Mr. Wyant's father. Mr. Wyant was to receive $15,787.90 as his separate property. The net proceeds remaining after all costs and expenses attendant to the sale were to be divided equally by the parties. However, the court ordered that Mr. Wyant would remain responsible for mortgage payments as well as taxes and insurance until the house was sold and that he would receive a $600 credit against the equity in the home for each payment he made.[2]

Soon after the final divorce order was entered, Mrs. Wyant filed motions requesting permission to leave the State with the two children and seeking an increase in alimony and child support. Hearings were held on the motions on February 2 and 10, 1989. In an order dated February 17, 1989, the court found a substantial change in circumstances in the financial condition of the parties—a year-end $5,000 bonus received by Mr. Wyant and the fact that he became a partner in his law firm on January 1, 1989. Therefore, the court ordered that Mr. Wyant immediately begin to pay the monthly $400 rehabilitative alimony although the house had not yet been sold.

The court also permitted Mrs. Wyant to move to Florida with the two children.

Mrs. Wyant maintains that her monthly expenses and those of her two children total $2,395 and that this amount is based upon Mr. Wyant paying all taxes and insurance on the house and car, medical insurance on Mrs. Wyant and the children, and the monthly mortgage payment. On appeal, Mrs. Wyant argues that the lower court abused its discretion in awarding child support which is totally inadequate and not supported by the facts of this case and rehabilitative alimony which is totally insufficient in amount and duration. We find merit in certain aspects of the appellant's arguments on both points and, for the reasons discussed below, we reverse the order of the Circuit Court of Kanawha County and remand this case to that court for proceedings consistent with this opinion.

As we noted above, the family law master's recommendation that Mr. Wyant pay $990 a month in child support was adopted, without further comment, by the circuit court in its final divorce order. Mrs. Wyant now argues that "the record in this case is totally void as to the method which was used in calculating child support." Actually, there is one brief and somewhat confusing reference to child support guidelines in the record,[3] but, as the appellant points out, there is "no evidence in the record as to how the Family Law Master arrived at the figure of child support in the amount of Four Hundred Ninety Five Dollars ($495.00) per month per child."

"West Virginia Code § 48A–2–8 now requires a family law master or circuit court judge to apply guidelines established by the child advocate office when awarding an amount of child support." *Clay v. Clay*, 182 W.Va. 414, 388 S.E.2d 288, 293 (1989). A trial judge must "inform both parties of

---

**2.** In the original petition for appeal in this case, Mrs. Wyant assigned as error the fact that Mr. Wyant was allowed to take a $600 credit against the equity in the jointly-owned home for each mortgage payment he made. However, the parties subsequently entered into a settlement on this issue.

**3.** At depositions taken before the family law master on May 17, 1988, Mr. Wyant was being questioned by his attorney about financial matters when Mrs. Wyant's attorney raised an objection to an exhibit and Mr. Wyant's attorney informed the family law master that, "We are discussing a worksheet from the Department of Human Services' child support formula."

the amount of child support proposed by application of the guidelines, and then award this amount unless each party made a 'knowing and intelligent waiver' of the amount and entered into an agreement otherwise providing for child custody and support." *Id.*

■ It is the appellee's position that there is no statutory requirement that the family law master or lower court make a written or specific finding on the record if the child support guidelines are followed. The appellee argues further that the appellant provides no evidence that the family law master did not follow the child support guidelines in granting the $990 per month award. In the syllabus of *Holley v. Holley*, 181 W.Va. 396, 382 S.E.2d 590 (1989), this Court held:

> When a family law master or a circuit court enters an order awarding or modifying child support, the amount of the child support shall be in accordance with the established state guidelines, set forth in 6 *W.Va.Code of State Rules* §§ 78–16–1 to 78–16–20 (1988), unless the master or the court sets forth, in writing, specific reasons for not following the guidelines in the particular case involved. *W.Va.Code*, 48A–2–8(a), as amended.

In the case now before us, the family law master did not set forth any reasons for not following the child support guidelines. Although this might lead one to assume that the guidelines were followed, as the appellee suggests, it is obvious that problems arise upon appellate review when the amount of child support is questioned and the record contains no evidence of the actual process by which the amount was ascertained. Thus, it is imperative that the family law master or circuit court judge include as part of the record the worksheets reflecting the actual calculations which result from the application of the child support guidelines to the facts of a particular case.

The appellant next raises the issue of the propriety of the rehabilitative alimony award in this case. Mrs. Wyant argues that in making its award, the trial court failed to consider the fact that she is the primary caretaker of two young children,

and made no allowance for the costs she would incur for child care services while taking classes to become recertified to teach, or for the child care expenses which would enable her to return to the teaching field within a three year period. In upholding the portion of the family law master's recommended decision awarding Mrs. Wyant $400 a month in rehabilitative alimony for a period of three years, Circuit Court Judge John Hey stated that Mrs. Wyant "has two college degrees and is able to seek employment pending recertification of her teaching certificate. The tender age of the children and recertification is not sufficient to support the deference of future employment."

■ In the past, this Court has recognized that, "[t]he concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." Syllabus point 1, *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984). In *Molnar*, which involved a fifty-three year old woman, we discussed awards of rehabilitative alimony to an older dependent spouse. Generally, however, we noted that "[t]here are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony." Syl. pt. 3, *Molnar.*

■ Mrs. Wyant argues that it was totally unrealistic for the lower court to conclude that she would be financially self-supporting at the end of the rehabilitative period, given the responsibilities and constraints of caring for two minor children. We agree with the appellant that the lower court failed to assess the impact that custody of the children would have on her ability to become financially self-supporting. West Virginia Code § 48–2–16 (1986) delin-

eates sixteen factors a court should consider when determining whether alimony should be awarded in a given case. It is the opinion of this Court that the lower court abused its discretion by not realistically considering either (1) the income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market, and custodial responsibilities for children, W.Va.Code § 48–2–16(b)(4); or (2) the extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home. W.Va.Code § 48–2–16(b)(13).

■ The tender age of and custodial responsibilities for the children of a marriage must be considered by a court when determining the amount and type of alimony to be awarded to a dependent spouse. It is more out of our recognition of the needs of children of tender years, rather than the needs or desires of the dependent spouse, that we conclude that rehabilitative alimony may not be sufficient, or perhaps even appropriate, in a particular situation. In this case, it is quite apparent that Mr. Wyant's present income and earning potential are substantially greater than that which Mrs. Wyant could realistically hope to achieve under even the best of circumstances if she were to return to teaching on a full-time basis. Additionally, we note that prior to the dissolution of her marriage, Mrs. Wyant functioned as a homemaker and as the primary caretaker of two young children. She apparently gave little or no consideration to the possibility of returning to the work force on a full-time basis.

■ A court should not relieve a supporting spouse from the duty to maintain the dependent spouse and children by providing only rehabilitative alimony simply because the dependent spouse may have the skills necessary to facilitate a return to the job market. Instead, the court should consider the following factors before opting for rehabilitative alimony over permanent alimony: (1) the dependent spouse's position in the home at the time of the divorce; (2) the age of the children; (3) the parties' income at the time of the divorce and their potential income in the future; and (4) the benefit, where economics permit, of the dependent spouse remaining in the home to care for the children.

■ " 'Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.' Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977)." Syllabus, *Luff v. Luff*, 174 W.Va. 734, 329 S.E.2d 100 (1985).

■ We are not satisfied that the lower court properly considered the criteria contained in W.Va.Code § 48–2–16 when making the alimony award to Mrs. Wyant. Moreover, the findings contained in the final order do not explain the basis of that court's decision to award Mrs. Wyant rehabilitative alimony rather than the permanent alimony she requested, nor the court's decision to order the marital home sold, as Mr. Wyant requested, rather than allow Mrs. Wyant and the two children to remain in the home. "Rule 52(a) of the West Virginia Rules of Civil Procedure requires a trial court in a divorce proceeding to state on the record findings of fact and conclusions of law which support its decision. A divorce decree which does not comply with this mandatory requirement may be remanded for compliance." Syllabus point 3, *Witte v. Witte*, 173 W.Va. 281, 315 S.E.2d 246 (1984).

For the foregoing reasons, we reverse the final order of the Circuit Court of Kanawha County and remand this case to that court for reconsideration of the child support and alimony awards.

Reversed and remanded.