425 S.E.2d 834

**Elizabeth Ellen PHILLIPS, Plaintiff Below, Appellant,**

v.

**Harold PHILLIPS, Defendant Below, Appellee.**

**No. 21218.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1992.

Decided Dec. 16, 1992.

Craig Levine, Appalachian Research and Defense Fund, Charleston, for appellant.

Bernard L. Spaulding, Logan, for appellee.

MCHUGH, Chief Justice:

This case is before the Court upon the appeal of Elizabeth Ellen Phillips, from the judgment of the Circuit Court of Logan County, dated January 2, 1992. The appellee is Harold Phillips. For reasons set forth herein, we reverse the judgment of the circuit court, and remand this case to that court for proceedings consistent with our opinion.

I

The facts of this case, which date back to 1987, have been a protracted ordeal from the start. However, the legal principles involved, and application hereto, are not as complex, and we recite herein only those facts which are pertinent to this appeal.

The parties were divorced by order of the circuit court on June 9, 1987. Both parties at that time appeared *pro se*, and an agreement was reached to share custody of their two children, Chad, who was then ten years

old, and Candi, who was then five years old. The family law master recommended and the circuit court approved of the joint custody arrangement.

Ten months later, the appellant petitioned the circuit court for a modification in child support, which, in essence, was a request to *establish* an obligation of child support payments inasmuch as none had been previously ordered. On September 1, 1988, following a hearing before the family law master, the parties agreed upon an amount of child support. While the appellee maintains that the amount was determined by the family law master using the appropriate child support formula in effect at the time, the appellant claims that the parties actually agreed to the amount. In any event, the resulting amount was $333.78 per month, and both parties waived, in writing, their right to appeal the family law master's recommended decision within ten days. *See W. Va. Code,* 48A–4–7 [1990]. The appellee began making the monthly payments, which continued until late 1989, although the order establishing the child support was apparently not entered until June 1990.

In August 1989, the appellee petitioned the circuit court to lower the child support order that he *believed* had been entered as a result of the September 1, 1988 agreement. The family law master, apparently not realizing that the order had not been entered, denied the appellee's petition because no change of circumstances had taken place.

The appellant then petitioned the circuit court to change the custody arrangement to her sole custody, alleging that the "joint custody" was unworkable. The appellant also sought to modify the child support accordingly. The family law master found that no material change in circumstances had occurred to warrant such modification.

As stated above, in late 1989, the appellee ceased making monthly child support payments.[1] Accordingly, the appellant petitioned the circuit court to enter an order to be effective September 1, 1988, *nunc pro tunc,* reflecting the child support obligation agreed to on that date before the family law master. The circuit court remanded to the family law master the issue of whether the order should be entered to be effective September 1, 1988, *nunc pro tunc.*

In June 1990, the appellant petitioned the family law master for entry of an order to be effective September 1, 1988, *nunc pro tunc.* The family law master obtained a copy of the order prepared by appellee's counsel in September 1988, and recommended that that order be entered by the circuit court, while the issue of child support modification was continued.

On June 29, 1990, the circuit court entered an order reflecting the original child support arrangement, whereby the appellee would pay the appellant $333.78 per month, effective September 15, 1988.

The appellee failed to make child support payments, and consequently, the child support issue was before the circuit court again, where the appellant attempted to establish an award of child support consistent with the state child support formula.[2] However, the circuit court ordered the appellee to pay only $250 per month.[3] Furthermore, the circuit court again remanded to the family law master the following issues for recommendations: (1) whether the child support order should be effective September 1, 1988, *nunc pro tunc;* and (2) an appropriate prospective custody and child support order.[4]

---

1. The appellant alleges that the appellee ceased making such payments upon discovery of the fact that the order requiring the payments had not been entered.

2. It is asserted that application of the state child support formula would have resulted in an amount approximately consistent with the amount set forth in the June 29, 1990 order.

3. The circuit court actually stated on the record that this $250 figure was "arbitrary."

4. From early 1990 to mid–1991, the oldest child, Chad, had moved back to his father's, the appellee's, home. During this sixteen-month period, Chad visited the appellant on alternate weekends, while Candi, who lived with the appellant, visited the appellee on alternate weekends. As indicated by the above text, the appellee did not

The family law master recommended that the "agreement" of September 1988 be given *"nunc pro tunc"* effect. This recommendation was based upon the finding that both parties had waived their rights to file exceptions. The family law master further recommended that the joint custody arrangement could not be modified since there had been no material change in circumstances. It was also recommended by the family law master that, based on an "80%–20%" joint custody split in favor of custody with the appellant, the appellant is entitled to $635.26 per month in child support. Both parties took exception, and a hearing was set before the circuit court.

On January 2, 1992, the circuit court entered the order that is at issue in this appeal. In that order, the following was done: (1) The circuit court overruled the family law master's recommendation on the issue of retrospective child support, holding that if there was such an agreement, then it would have to be enforced in a separate contract action. Accordingly, the appellant was *not* entitled to the $333.78 per month enforceable back to September 1988; (2) The circuit court ruled that the June 29, 1990 order was "null and void" in that it "was entered by the [circuit] Court inadvertently and by mistake."; (3) The circuit court affirmed the family law master's recommendation to not modify the joint custody arrangement; and (4) The circuit court refused to adopt the family law master's recommendation that the appellee's child support obligation be $635.26, which was based on the state child support formula and the "80%–20%" joint custody split. Rather, the circuit court again remanded the matter concerning prospective child support to the family law master.

It is from this January 2, 1992 order that the appellant seeks relief. As stated previously, the facts of this case involve a long ordeal where the fate of the parties and their children has been passed back and forth between the circuit court and the family law master.

## II

■ The first issue to be addressed herein is whether the appellee has a duty to pay the appellant the child support dating back to September 1988. Both parties argue the merits of whether entry of an order *"nunc pro tunc"* is proper on this point.

However, we do not believe that a discussion on principles relating to *"nunc pro tunc"* orders is necessary. Rather, before the merits of that issue would even need to be reached, it is obvious that the circuit court committed error by concluding that the June 29, 1990 order was "null and void."

*W.Va.Code*, 48A–4–10 [1990], which establishes review by a circuit court of a family law master's recommended order, provides, in part, the following:

(d) In making its determinations under this section, the circuit court shall review the whole record or those parts of it cited by a party. If the circuit court finds that a master's recommended order is deficient as to matters which might be affected by evidence not considered or inadequately developed in the master's recommended order, the court may recommit the recommended order to the master, with instructions indicating the court's opinion, or the circuit court may proceed to take such evidence without recommitting the matter.

(e) The order of the circuit court entered pursuant to the provisions of subsection (d) of this section *shall be entered not later than ten days after the time for filing pleadings or briefs has expired or after the filing of a notice or notices waiving the right to file such pleading or brief.*

(emphasis supplied)

As stated in section I herein, the parties, on September 1, 1988, waived their right to appeal the family law master's recommended decision. Accordingly, pursuant to

---

pay any support to the appellant at this time. By the time the family law master heard the child support issue in August 1991, Chad had moved back in with the appellant after having difficulties with his father, so both children are living with their mother, the appellant, and visit their father, if at all, every other weekend.

the provisions of *W.Va.Code*, 48A–4–10 [1990], the circuit court had ten days after September 1, 1988 to enter an order reflecting the family law master's recommended decision. Through some oversight, this order was not entered, but, upon bringing the failure to make entry to the court's attention, the circuit court did, on June 29, 1990, enter an order reflecting the parties' agreement.[5]

Accordingly, it was proper for the circuit court to correct the previous failure to enter the order. On the other hand, it is not clear as to why the circuit court, in the January 2, 1992 order, held that the June 29, 1990 order was entered "inadvertently and by mistake." No reasons are given for this ruling.

Therefore, the circuit court committed error by declaring "null and void" the June 29, 1990 order, which established that the appellee pay the appellant child support in the amount of $333.78 per month.

### III

■ The appellant also contends that the circuit court and the family law master abdicated their responsibility of awarding her sole custody by placing more weight on the fact that there was no material change in circumstances, rather than follow the principle enunciated by this Court in syllabus point 4 to *Lowe v. Lowe*, 179 W.Va. 536, 370 S.E.2d 731 (1988). That syllabus point provides: "A cardinal criterion for an award of joint custody is the agreement of the parties and their mutual ability to cooperate in reaching shared decisions in matters affecting the child's welfare."

Specifically, in its January 2, 1992 order, the circuit court stated that "the [circuit] Court upholds the finding of the Family Law Master that there has been no change in circumstances which would support a modification of joint custody."

*W.Va.Code*, 48–2–15(e) [1992] provides, in part:

> The court may also from time to time [after the entry of an order], on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, revise or alter such order concerning the custody and support of the children, and make a new order concerning the same, issuing it forthwith, as the circumstances of the parents or other proper person or persons *and the benefit of the children may require* [.]

(emphasis supplied)

[3] While it may be proper for a circuit court or family law master to determine whether a change in circumstances has occurred for settling custodial questions, that is, by no means, the *sole* criterion. Rather, the following principle is well established: "To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child." Syl. pt. 2, *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977). *Accord*, syl. pt. 1, *Weece v. Cottle*, 177 W.Va. 380, 352 S.E.2d 131 (1986).

■ With respect to joint custody specifically, we held in syllabus point 3 to *Lowe:* "In determining if joint custody is appropriate, a court must make a sufficient factual inquiry to insure that such an arrangement is, indeed, in the best interest of the child."[6]

The appellant points out that the custodial arrangement that the parties live by now, and since August 1991, *see supra* note 4, is a very traditional sole custodial

**5.** Although not dispositive, it is worth noting that in the June 29, 1990 order, the typewritten section designated for the date reads: "ENTERED this __ day of _____ 1988." "1988" is crossed through, and 1990 is handwritten over it. This indicates that the order was prepared following the September 1, 1988 waiver of the ten-day appeal to the circuit court, in anticipation of entry to follow shortly thereafter.

**6.** Syllabus point 1 to *Lowe*, which addresses a custody award when the divorce is initially ordered, provides: "Under West Virginia Code § 48–2–15 (1986 Replacement Vol.), a circuit court may, in the divorce order, provide for joint custody of minor children when the parties so agree and when, in the discretionary judgment of the circuit court, such agreement promotes the welfare of the child."

arrangement whereby both children live with one parent, and visit the other parent every other weekend. Moreover, it is apparent that the parties do not necessarily have a "mutual ability to co-operate in reaching shared decisions" where their children's welfare is concerned. *See* syl. pt. 4, *Lowe.*

■ We believe that upon a petition seeking a change in the custody arrangement of a child from joint custody to sole custody, the primary criterion considered by a circuit court or family law master should be the best interests of the child and the mutual ability of the parties in reaching shared decisions with respect to those interests, and not solely whether a change in circumstances has occurred.

Accordingly, the judgment of the circuit court on this assignment of error is reversed. Upon remand, the circuit court or family law master should approach this issue with the above-stated principles in mind.

### IV

Finally, the appellant raises as error the circuit court's award of child support. The appellant alleges that under the state child support formula, *if she were deemed sole custodian* of the children, then she would be entitled to an award of $766.50 per month. The family law master, as pointed out in section I herein, assumed an "80%–20%" split, and arrived at an amount of $635.26 per month, again, applying the state child support formula.

In either case, it is clear that the circuit court ignored both figures by leaving in place the award of $250 per month. *See* section I.

*W.Va.Code,* 48A–2–8(a) [1989] provides:

The director of the child advocate office shall, by legislative rule, establish guidelines for child support award amounts so as to ensure greater uniformity by those persons who make child support recommendations and enter child support orders, and to increase predictability for parents, children and other persons who are directly affected by child support orders. There shall be a rebuttable presumption, in any proceeding before a family law master or a circuit court judge for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case. The guidelines shall not be followed:

(1) When the child support award proposed to be made pursuant to the guidelines has been disclosed to the parties and each party has made a knowing and intelligent waiver of said amount, and the support obligors have entered into an agreement which provides for the custody and support of the child or children of the parties; or

(2) When the child support award proposed to be made pursuant to the guidelines would be contrary to the best interests of the child or children, or contrary to the best interests of the parties.

The guidelines established by this statutory provision are set forth in 6 *W.Va.C.S.R.* § 78–16–1 to § 78–16–20.

■ In *Holley v. Holley,* 181 W.Va. 396, 382 S.E.2d 590 (1989), this Court, in that opinion's sole syllabus point, held:

When a family law master or a circuit court enters an order awarding or modifying child support, the amount of the child support shall be in accordance with the established state guidelines, set forth in 6 *W.Va.Code of State Rules* §§ 78–16–1 to 78–16–20 (1988), unless the master or the court sets forth, in writing, specific reasons for not following the guidelines in the particular case involved. *W.Va.Code,* 48A–2–8(a), as amended.

The circuit court in this case not only declined to follow the guidelines for child support, but also admitted that the $250 per month award was an "arbitrary" figure, thus, failing to set forth why the guidelines should not be followed. Clearly, this is reversible error.

Accordingly, we reverse the circuit court on this point, and remand this case so that, with our holding set forth herein regarding the custodial arrangement and the child support formula, that court may arrive at an amount consistent with those well established legal principles.[7]

### V

Consistent with the foregoing, the January 2, 1992 order of the Circuit Court of Logan County is reversed, and this case is remanded to that court for proceedings consistent with our holding herein.

Reversed and remanded.

---

7. In light of our opinion with respect to the circuit court's error in relieving the appellee of his child support obligation, we need not address any issue concerning the arrearages that have been accruing on the difference between the proper amount of child support and the amount actually ordered by the court.